IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EBONI COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 7064 |
| | ) | |
| SUPERVALU, INC. SHORT TERM | ) | Judge Milton I. Shadur |
| DISABILITY PROGRAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Eboni Coleman ("Coleman") has brought this two-count action under the Employee Retirement Income Security Act ("ERISA") against Supervalu, Inc. ("Supervalu") and the Supervalu Inc. Short Term Disability Program (the "Program"). As a participant in the Program, Coleman claims in Count I that she has been denied benefits due under its terms and in Count II that Supervalu violated ERISA when it failed to provide her with requested Program documents.

Both defendants have asked this Court to dismiss Coleman's claims due to improper venue under Fed. R. Civ. P. ("Rule") 12(b)(3) and 28 U.S.C. §1406(a).[1] Defendants maintain that Coleman agreed to a forum selection clause that named a different jurisdiction as the only proper venue for litigation connected to the Program. As an alternative to dismissal, defendants seek a transfer to the United States District Court for the District of Minnesota. Defendants have also filed a Rule 12(b)(6) motion to dismiss Count II--the alleged failure to deliver Program

---

[1] All further references to Title 28's provisions will simply take the form "Section–."

documents--for failure to state a claim upon which relief can be granted. For the following reasons, defendants' motions under Rule 12(b)(3) and Section 1406(a) are denied, while their Rule 12(b)(6) motion is granted, thus calling for dismissal of Count II.

**Standard of Review**

Section 1406(a) allows for the transfer or dismissal of a plaintiff's suit, but it is applicable only if that suit is filed in the "wrong division or district." In re LimitNone, LLC, 551 F.3d 572, 575 (7th Cir. 2008) teaches that a forum selection clause cannot render venue "wrong" if venue would be proper in the clause's absence, at least for the purposes of Section 1406(a). Because Defendants do not contend that venue would be improper absent the existence of the forum selection clause at issue, Section 1406(a) cannot serve as the basis for transfer or dismissal of Coleman's suit.[2]

Rule 12(b)(3), however, allows for the dismissal of a suit when venue is chosen in contradiction to an enforceable forum selection clause. As Continental Cas. Co. v. Am. Nat. Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) states:

> Under Rule 12(b)(3), the district court [is] not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment.

Instead evidence submitted outside the pleadings may be considered to the extent that it sheds light on whether a court's venue is proper (Faulkenberg v. CB Tax Franchise Sys., LP, 637 F.3d 801, 809-10 (7th Cir. 2011)). This Court must nonetheless take Coleman's well-pleaded facts as

---

[2] LimitNone, 551 F.3d at 575-76 does note that a district court has the discretion to transfer a case under Section 1404(a) even when venue is proper. But defendants make no mention of that section in their briefs, nor do they provide any reason why this Court should transfer this case if it decides that dismissal is inappropriate. Hence this opinion will not consider whether transfer might be appropriate under Section 1404(a).

true (id. at 806).

As for Rule 12(b)(6), by now it is stale news that over five years ago Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63 (2007) repudiated as overly broad the then half-century-old formulation in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Instead Twombly, id. at 555 teaches that a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." Or put otherwise, "[f]actual allegations must be enough to raise a right of relief above the speculative level" (id. at 555). As with Rule 12(b)(3), Rule 12(b)(6) requires this Court to accept as true all of Coleman's well-pleaded factual allegations, with all reasonable inferences drawn in her favor (Christensen v. County of Boone, 483 F.3d 454, 457 (7th Cir. 2007) (per curiam)). What follows in this opinion adheres to those principles.

**Background**

Coleman is a retail pharmacist at a Supervalu-owned Jewel-Osco store located in northern Illinois (Compl. ¶9).[3] Through her employment Coleman is a participant in the Program, which is self-administered by Supervalu (id. ¶¶6, 9). In accordance with ERISA dictates Supervalu has issued a Summary Plan Description (the "Summary") explaining the terms of the Program in effect at the time of Coleman's disability claim (the Summary, which is D. Mem. Ex.1, is cited by page number). First among the Summary provisions relevant to this action is this forum

---

[3] Coleman's Complaint will be cited "Compl. ¶ —." Defendants' memorandum in support of their Rule 12(b) motions will be cited "D. Mem. —," Coleman's response will be cited "C. Mem. —" and defendants' reply will be cited "D. R. Mem. —." Citations to exhibits attached to those documents will add "Ex.—" to the appropriate document designation.

selection clause (the "Clause," Summary at 15):

> All litigation in any way related to the Program (including but not limited to any and all claims brought under ERISA, such as claims for benefits (as described below) and claims for breach of fiduciary duty) must be filed in the United States District Court for the District of Minnesota.

Another provision–relevant to Count II--establishes Supervalu as the Plan Administrator and provides a P.O. box in Minnesota as its address (id. at 21). In addition the Summary explains that Supervalu as Plan Administrator "has delegated certain duties . . . to the SUPERVALU Benefit Programs Committee, which has in turn delegated certain duties to the SUPERVALU Health and Welfare Programs Administrative Committee" (id. at 16).

Coleman has filed at least two disability claims in connection with the Program. In 2007 she was forced to stop working due to severe pain caused by enlarged uterine fibroids that occurred during the final trimester of a pregnancy (Compl. ¶¶ 14-15). She applied for short-term disability benefits under the Program, and those benefits were granted (id.). In October 2011 Coleman, again pregnant, experienced the same uterine-fibroid-induced pain that had occurred during her 2007 pregnancy and again applied for disability benefits under the Program (id. ¶¶16-20). Despite the fact that Coleman submitted the same type of paperwork from her physician in 2011 that she had proffered for her 2007 claim, her request for benefits was denied (id.). Coleman filed two appeals, but those too were denied (id. ¶¶28-29). In July 2012 the last of those denials, which constituted a final administrative decision, was issued (id. ¶29).

After the original denial of her benefits claim but before she began the appeals process, Coleman requested that Supervalu send her certain Program documents to enable her to assess the propriety of that denial (id. ¶¶23-26). In December 2011 Coleman sent a letter to that effect

4

to Pamela Dean ("Dean"), a Supervalu leave administrator located in Franklin Park, Illinois (id.). Coleman requested (1) the documents that the Program relied upon in approving her disability leave in 2007, (2) her claims file from her 2007 disability leave and (3) a copy of the Program that was in effect for 2011 (id.). Neither Dean nor anyone else from Supervalu responded to the request (id.). In March 2012 Coleman sent another request to Dean, this time asking for her "personnel records"--specifically any documents relating to her prior disability claim (id.). That request was also ignored (id.).

On September 5, 2012 Coleman filed this ERISA action, requesting (1) past-due benefits under the Program and (2) statutory damages under 29 U.S.C. §1132(e) for Supervalu's alleged failure to provide the requested Program documents. Defendants then filed their motions to dismiss, to which this opinion now turns.

**Motion To Dismiss for Improper Venue**

Defendants maintain that the Clause requires this Court to dismiss Coleman's action for improper venue under Rule 12(b)(3), for it establishes the District Court in Minnesota as the only appropriate venue for litigation involving the Program. Coleman counters by arguing that forum selection clauses are antithetical to ERISA §1132(e)(2)[4]:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

Because Coleman was denied benefits in northern Illinois, venue would clearly be proper in this

---

[4] All subsequent citations in the form "§--" will omit "29 U.S.C."--the statutory location of ERISA--unless otherwise noted. This usage is adopted because the shorthand "Section" has been reserved for Title 28 provisions (see n.1).

district but for the Clause, as this is "the district where the breach [allegedly] took place" (§ 1132(e)(2)). What this opinion must determine, then, is whether §1132(e)(2) prevents the enforcement of a forum selection clause--or at least this forum selection clause--when contained in an ERISA benefits plan.

Forum selection clauses have long been held to be "prima facie valid" (M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). When a party seeks to escape such a clause, it has the heavy burden of proving that the clause is unreasonable for one of three reasons (Bonny v. Soc'y of Lloyd's, 3 F.3d 156, 160 (7th Cir. 1993), citations omitted but quoting Bremen, 407 U.S. at 18):

> (1) if [its] incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; (2) if the selected forum is so "gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court;" or (3) if enforcement of the clause[] would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

Because Coleman does not contend that either of the first two bases for unreasonableness is applicable to the Clause, this opinion will confine its analysis to whether the Clause "contravene[s] a strong public policy" announced in ERISA.

As an initial matter, §1132(e)(2) is not a neutral provision merely describing the venues in which ERISA actions can be heard, but is rather intended to grant an affirmative right to ERISA participants and beneficiaries (Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520, 1524-25 (11th Cir. 1987)). That much is confirmed by ERISA's "declaration of policy," which states that "it is . . . the policy of [ERISA] to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing for . . . <u>ready access to the Federal courts</u>"

6

(§1001(b) (emphasis added)). In addition, ERISA's legislative history explains that Congress intended its enforcement provisions "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary duties" (H.R. Rep. No. 93-533, 93d Cong., 1st Sess. 17 (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4655). That same conclusion has been reached by the Eleventh Circuit, which referred to §1132(e)(2) as a "sword that Congress intended participants/beneficiaries to wield in asserting their rights" (Gulf Life, 809 F.2d at 1525). Defendants therefore cannot argue that Congress was unconcerned with participants' access to the three listed venues in §1132(e)(2).

Defendants nevertheless maintain that §1132(e)(2) is not inconsistent with the inclusion and enforcement of a forum selection clause in an ERISA benefits plan. They point out that Congress was silent as to whether the expanded venue options could be limited by private parties, as venue options generally can be under the Bremen presumption favoring forum selection clauses. Defendants add that §1132(e)(2)'s lack of any clear prohibition against forum selection clauses is telling in light of the narrow scope of §1110(a)'s prohibition, which states that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." Without a clearer statement by Congress, defendants argue, Coleman was free to--and in fact did--waive her §1132(e)(2) venue rights.

Coleman responds that the thrust of §1104(a)(1)(D)(emphasis added) is to prohibit the type of purported "waiver" of §1132(e)(2) rights described by defendants:

> [A] fiduciary shall discharge his duties with respect to a plan . . . (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of

7

[ERISA]

Because Supervalu, as Administrator of the Program, automatically qualifies as a fiduciary (see 29 C.F.R. §2509.75-8(D-3)), Coleman maintains that it would be ERISA-violative for Supervalu to enforce the Clause, for it is not "consistent" with §1132(e)(2). In essence Coleman is arguing that ERISA rights cannot be waived through the terms of a plan, because a fiduciary would never be able to enforce a plan term that conflicts with ERISA. Hence Coleman urges that the Clause is unenforceable and venue is proper under §1132(e)(2).

While no federal circuit courts have passed upon this issue, several district courts have, and a substantial majority of them have agreed with defendants' position (see, e.g., Rodriguez v. Pepsico Long Term Disability Program, 716 F. Supp. 2d 855, 861-62 (N.D. Cal. 2010); Klotz v. Xerox Corp., 519 F. Supp. 2d 430, 435-36 (S.D.N.Y. 2007); Bernikow v. Xerox Corp. Long-Term Disability Income Plan, No. CV 06-2612, 2006 WL 2536590 at *2 (C.D. Cal. Aug. 29)). Those courts have come to the general consensus that Congress would have needed to speak much more clearly to prevent private parties from agreeing to a particular venue ex ante, especially in light of what they characterize as §1132(e)(2)'s permissive language ("an action . . . may be brought in [one of three venues]" (emphasis added))[5] and the Supreme Court's strong presumption in favor of forum selection clauses (see Rodriguez, 716 F. Supp. 2d at 861-62; Klotz, 519 F. Supp. 2d at 435-36; Bernikow, 2006 WL 2536590 at *2). On the other side of the coin, Nicolas v. MCI Health & Welfare Program No. 501, 453 F. Supp. 2d 972, 974 (E.D.

---

[5] While it is certainly true that in many contexts "may" can cannote permissiveness--as when it is contrasted with "must"--in this instance the fair reading of §1132(e)(2) is rather one of conferring a right to bring an ERISA action in any one of the three alternative venues specified in the statute.

8

Tex. 2006) refused to enforce an ERISA plan's forum selection clause, reasoning that it "can not allow the Plan's forum selection clause to override a Congressionally enacted statutory framework aimed at assisting employees"; see also Wellmark, Inc. v. Deguara, No. 02-CV-40534, 2003 WL 21254637 at *3 (S.D. Iowa May 28).

Importantly, none of the courts on either side of the issue has considered Coleman's argument that §1104(a)(1)(D) prevents participants from waiving their §1132(e)(2) rights through the terms of a plan. But also importantly, that argument has been considered by the Department of Labor, and the Department has come to the same conclusion as Coleman (see Brief for the Sec'y of Labor as Amicus Curiae, Mozingo v. Trend Personnel Servs., No. 11-3284, 2012 WL 1966227 (10th Cir. May 24, 2012), available at http://www.dol.gov/sol/media/briefs/mozingo%28A%29-05-24-2012.htm) (hereinafter "Mozingo Brief") and Brief for the Sec'y of Labor as Amicus Curiae, Nicolas v. MCI Health & Welfare Program, No. 09-40326 (5th Cir. 2009) available at http://www.dol.gov/sol/media/briefs/nicolas(A)-8-31-2009.htm).[6] In each of those amicus briefs the Department advanced this contention before the Court of Appeals (Mozingo Brief at 6):

> [F]orum selection clauses are incompatible with ERISA. In the ERISA context, the public policy expressed in the statute's broadly-worded venue provision is exceptionally strong given the express provision in . . . §1104(a)(1)(D), which precludes modifying ERISA rights and remedies by contract . . . .

Given that the Department administers ERISA (Cent. States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv., Inc, 870 F.2d 1148, 1153 (7th Cir. 1989)), Coleman believes that the

---

[6] That Fifth Circuit case settled before a decision was reached by the Court of Appeals, and the Tenth Circuit case was decided on other grounds (2012 WL 1966227).

Department's position merits a level of deference.

Defendants contest Coleman's and the Department's reading of §1104(a)(1)(D), arguing that the provision is applicable only to a fiduciary's executory functions--such as the management of investments--and that the §1104(a)(1)(D) cases cited by Coleman reveal its limited application. Defendants also dispute the proposition that the Department's interpretation of §§1104(a)(1)(D) and 1132(e)(2) is deserving of deference. Neither of those quarrels has to be settled for purposes of this case, though, because even if §1104(a)(1)(D) does not outright foreclose the inclusion of forum selection clauses in benefit plans generally, the inclusion of such clauses in a plan of the nature at issue here runs counter to the strong public policy announced by Congress in ERISA.

Although there may be exceptions, ERISA plans are rarely the subject of arms'-length negotiation (Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 874 (7th Cir. 1997)). Instead employers most often unilaterally design the benefits packages that they offer their employees (Ames v. Am. Nat'l Can Co., 170 F.3d 751, 757 (7th Cir. 1999))--and such was the case here (see C. Mem. 10; D. R. Mem. 9).

As defendants would have it, an employer's insertion of a forum selection clause into a plan ought to result in participants having two choices: (1) to forgo participation in the type of benefit plan being offered or (2) to accept the plan and "waive" their §1132(e)(2) rights. But a purported "right" subject to such conditions is no right at all. If that type of "waiver" were permitted, an employer could obliterate any ERISA requirements merely by including a term in its benefits plan that contradicts a statutorily established right. That would make ERISA no better than an unenforceable wish list, flouting the will of Congress completely.

10

As already indicated, Coleman and the Department view §1104(a)(1)(D) as having been included for the express purpose of preventing that type of end run around ERISA's standards, so as to insure that those standards provide actual protection to participants and beneficiaries. Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transport, 472 U.S. 559, 568 (1985) shows that §1104(a)(1)(D) accomplishes that goal in at least some contexts. But regardless of whether its reach also extends to the current situation, Congress clearly desires open access to several venues for beneficiaries seeking to enforce their rights--and it is equally clear that an employer's unilateral restriction of that access would undermine Congress' stated desire.

Hence in Bremen terms the Clause must be deemed unreasonable as contrary to public policy, so that it is unenforceable. Under the circumstances before this Court, the employer's unilateral action cannot trump the minimum statutory protections established by Congress.

Defendants argue that any such holding is contrary to the teaching of Carnival Cruise Lines v. Shute, 499 U.S. 585, 593-95 (1991), which held that a forum selection clause printed on the back of a cruise ticket was enforceable. They would liken the Clause to the provision that was upheld in Carnival Cruise Lines, id. at 593, where the nonexistence of negotiations or a bargaining process did not preclude enforceability. But there is a vital difference between the context in which the Carnival Cruise Lines contract was formulated and the context in which ERISA plans are agreed to. There the contract was written on a blank slate, permitting the cruise line to dictate the terms by which it would be willing to serve its customers (including the requirement that customers submit to a forum selection clause). When ERISA plans are formulated, however, participants automatically possess certain rights decreed by Congress. Even if a participant can waive certain of those rights, it must take more than his or her simple

11

participation in a company-wide plan unilaterally created by an employer to hold that the participant's congressionally conferred right has been waived.

Defendants' next counter-argument--drawn from Klotz, 519 F. Supp. 2d at 436--suggests that our Court of Appeals' acceptance of arbitration clauses in ERISA plans (see Challenger v. Local Union No. 1 of Int'l Bridge, Structural, & Ornamental Ironworkers, 619 F.2d 645, 647-48 (7th Cir. 1980)) ought to require this Court to honor the forum selection clause at issue. Defendants first point to language speaking of an arbitration clause as "in effect, a specialized kind of forum-selection clause" (Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974)) or as a "species of forum selection clause" (Armstrong v. LaSalle Bank Nat'l Ass'n, 552 F.3d 613, 616 (7th Cir. 2009)) as somehow requiring that any type of ERISA forum selection clause be honored. Not so, for arbitration clauses and forum selection clauses still serve very different purposes. Although both determine ex ante where disputes will be resolved, traditional forum selection clauses establish the judicial arena where an action can be brought, while arbitration clauses codify an agreement to avoid litigation altogether.

Because of the different nature and consequences of the two types of clause, there are distinct policy concerns attendant to the acceptance or rejection of each. Once again, §1132(e)(2) regulates "[w]here an action...is brought," so that a plan's forum selection clause of the type chosen by Supervalu forces an individual plaintiff to litigate well away from the venues designated in that section (with a substantial increase in expense and inconvenience), while by contrast arbitration provides an alternative decisionmaker without necessarily creating such hardships for the individual.

In that respect it is noteworthy that there are ERISA regulations that limit strictly the

situations in which arbitration clauses can be enforced in ERISA plans (see 29 C.F.R. §2560.503-1(c)(4)). Indeed, those regulations prohibit any arbitration clause that prevents a beneficiary from challenging an adverse benefit determination under §1132(a)--the very provision that permits participants and beneficiaries to bring civil actions to enforce their ERISA rights. In sum, defendants are wrong in contending that permissibility of arbitration clauses in ERISA plans calls for a conclusion different from that reached by this Court.

Finally, defendants urge that forum selection clauses actually advance one of ERISA's underlying policies: to "bring a measure of uniformity in an area where decisions under the same set of facts may differ from state to state" (H.R. Rep. No. 93-533 (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4650). Defendants claim that the Clause will advance that policy by entrusting a single district court with the sole authority to interpret the Program. That, however, is the function of a choice-of-law provision, <u>not</u> a forum selection clause. There is no reason that a plan's choice-of-law designation cannot coexist with a participant's or beneficiary's choice from among a variety of venues when enforcing his or her ERISA rights--the entitlement conferred by §1132(e)(2). That last line of defendants' attack is purely and simply a non sequitur.

For many reasons, then, the Clause will not be enforced. Defendants' Rule 12(b)(3) motion to dismiss is denied.

**Motion To Dismiss Count II for Failure to State a Claim**

Coleman's Count II claims that Supervalu failed to comply with its duty under ERISA to provide certain Program documents that she requested from Dean, Supervalu's Leave Administrator in Franklin Park, Illinois. In defense Supervalu points out that Coleman did not

send her request to the address listed for the Plan Administrator in the Summary.[7] That, Supervalu maintains, prevents the recovery of statutory damages under the terms of ERISA and the controlling case law interpreting it.

Coleman's statutory damages request is predicated on a portion of §1132(c)(1):

Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal . . . .[8]

There is no question that Supervalu is the Administrator of the Program. It is labeled as such in the Summary at 16 and 21, and §1002(16)(A)(I) defines "administrator" in part as "the person specifically so designated by the terms of the instrument under which the plan is operated."

It is also clear that Supervalu as Plan Administrator was obligated to deliver to Coleman at least some of the records she requested if her request was made properly, for §1024(b)(4) requires Plan Administrators "upon written request" to "furnish a copy of the latest updated summary[ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." Because defendants admit that Coleman requested some of the documents listed in §1024(b)(4), this opinion need determine only whether Coleman's communications to

---

[7] Defendants also argue that ERISA does not require Supervalu to provide some of the documents requested by Coleman, even if her requests were properly made. Because Coleman did not properly request the Program documents at issue, however, this Court need not confront that alternative argument.

[8] That maximum per-day penalty for violations of that section committed after 1997 was raised to $110 by 29 C.F.R. §2575.502c-1.

14

Supervalu's Leave Administrator were enough to trigger its §1024(b)(4) obligations and thus §1132(c)(1) statutory damages.

Mondry v. Am. Family Mut. Ins. Co., 557 F.3d 781, 794 (7th Cir. 2009) teaches that only a party holding the title of "plan administrator" can be liable for statutory damages under §1132(c)(1)[9] even if the plan administrator has delegated certain duties to a third party. Jones v. UOP, 16 F.3d 141, 144 (7th Cir. 1994) goes one step further, holding that departments under the same corporate umbrella as the listed plan administrator--in Jones it was the legal and personnel departments--are not obligated to respond to a participant's document requests when those departments are located at an address different from that provided for the corporation's administering entity (id.).

This case cannot be meaningfully distinguished from Jones. Supervalu is listed as the Plan Administrator in the Program and, similar to Jones, the Program provides that an Administrative Committee is empowered to handle whatever administrative duties Supervalu has decided to delegate.

Finally, Supervalu's headquarters address in Minnesota was listed as the location of both Supervalu qua Plan Administrator and the Administrative Committee. Yet rather than send her requests to the designated plan-administering entity at the address listed in the Summary Coleman sent requests to Dean in Franklin Park, Illinois. But it should have been clear to Coleman that Supervalu's headquarters generally, and the Administrative Committee

---

[9] There is an exception to that rule where the elements of equitable estoppel are present (Mondry, 557 F.3d at 794). For that to be the case, Dean would have had to convince Coleman that she need not seek documents from the proper source--the plan administrator (id. at 794-95). Here, though, Coleman admits that Dean simply ignored the document requests, so that equitable estoppel is not present.

15

specifically, were the entities responsible for administering the Program, and that document requests under §1024(b)(4) ought to have been sent to them at the address specified in the Summary (see Jones, 16 F.3d at 144). Thus Coleman's failure to send her document requests to the proper entity at the proper location prevents her from recovering statutory damages under §1132(c)(1).

Coleman maintains that she is still eligible for §1132(c)(1) damages despite her failure to send a proper document request. First she argues that under §1024(b)(2) and corresponding ERISA regulations, the Franklin Park office to which she sent her document requests was required to make those documents available for examination "within ten calendar days following the day on which [her] request for disclosure at that location [was] made" (29 C.F.R. §2520.104b-1(b)(3); see also §1024(b)(2)). As Defendants point out, it is questionable whether the statutory damages prescribed in §1132(c)(1) are even available when a violation of the cited regulations occurs, given that §1132(c)(1) allows plan administrators 30 days to comply with a document request while the regulations only allow ten days. But that aside, it is clear from Coleman's submissions that her document requests are of the type described in §1024(b)(4), not §1024(b)(2). Under §1024(b)(2) administrators must make certain plan documents available "for examination . . . in the principal office of the administrator and in such other places as may be necessary," suggesting that participants can view the documents at certain locations but are not necessarily entitled to take the documents with them. Section 1024(b)(4), on the other hand, requires administrators to "furnish" documents to participants "upon written request of any participant or beneficiary." Here Coleman sent just such a written request and expected to have the requested documents mailed to her (see Compl. ¶¶ 23-26, 38). That is clearly the procedure

contemplated under §1024(b)(4), and hence Supervalu had no obligations under §1024(b)(2) as it relates to Coleman and her request for plan documents.

Coleman's remaining arguments can be handled in short order. First, she notes that Jones and several other cases cited by Supervalu were disposed of at the summary judgment stage rather than on a motion to dismiss. But she fails to explain why that fact has any bearing on this Court's ability to rule, nor does she point to a question of fact that must be clarified through discovery, so the argument fails. Next Coleman contends that Dean should have directed her to the proper channels through which she could obtain the requested documents, but ERISA establishes no such duty on non-plan-administrating entities, as confirmed by Jones, 16 F.3d at 144.

Coleman also insinuates in passing that she did not have a copy of the Summary, that contained the address to which she was supposed to send her document requests. To whatever extent Coleman is actually asserting that fact should have forgiven her failure to send requests to Supervalu's Minnesota office, the argument is waived--more accurately forfeited--for lack of development or citation to authority (Weber v. Univs. Research Ass'n, Inc., 621 F.3d 589, 592-93 (7th Cir. 2010)). Moreover, the argument most likely would have failed even if available to Coleman--remember that §1024(b)(4) contains no exception to the requirement that requests be sent to the administrator in order to trigger the administrator's obligations.

Coleman plainly does not qualify for statutory damages under §1132(c)(1). Complaint Count II is therefore dismissed.

## Conclusion

Defendants' motion to dismiss both counts of Coleman's suit pursuant to Rule 12(b)(3) is

denied, for the forum selection clause at issue is unenforceable. Defendants' Rule 12(b)(6) motion to dismiss Complaint Count II, however, is granted. This action will therefore proceed to discovery solely on Complaint Count I, and a status hearing is set for 8:45 a.m. February 6, 2013 to discuss further proceedings.

                                            _____
                                            Milton I. Shadur
                                            Senior United States District Judge

Date: January 31, 2013